# ORIGINAL TRANSCRIPT



2012 SEP 17  PM 3: 29

DISTRICT OF UTAH

## IN THE UNITED STATES BANKRUPTCY COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE: | ) **TRANSCRIPT OF** <br> ) **PROCEEDINGS** |
| VS FOX RIDGE, LLC | ) |
| and | ) Bankr. Case No.: <br> ) 12-28001-JTM |
| STEPHEN LAMAR CHRISTENSEN <br> and VICTORIA ANN <br> CHRISTENSEN, | ) Bankr. Case No.: <br> ) 12-28010-JTM |
| Debtors. | ) Jointly Administered <br> ) Under Case No.: <br> ) 12-28001-JTM |
| | ) (Chapter 11) |

September 13, 2012 * 2:00 p.m.

TRANSCRIPT PRODUCED FROM ELECTRONIC RECORDING

Location:  United States Bankruptcy Court
350 South Main Street, #348
Salt Lake City, Utah 84101

Reporter:  Kelly Fine-Jensen, RPR
Notary Public in and for the State of Utah





236 South 300 East
Salt Lake City, Utah 84111

PH: 801.532.3441   FAX: 801.532.3414   TOLL FREE: 877.532.3441

1                    A P P E A R A N C E S

2    FOR VS FOX RIDGE, LLC:

3                    Matthew M. Boley
                     PARSONS KINGHORN HARRIS, PC
4                    Attorneys at law
                     111 East Broadway, #1100
5                    Salt Lake City, Utah 84111
                     Telephone: (801) 363-4300
6                    Fax: (801) 363-4378
                     E-mail: mmb@pkhlawyers.com
7

8    FOR STEPHEN LAMAR CHRISTENSEN AND VICTORIA ANN
     CHRISTENSEN:
9
                     David T. Berry
10                   BERRY & TRIPP
                     Attorneys at law
11                   5296 South 300 West, #200
                     Salt Lake City, Utah 84107
12                   Telephone: (801) 265-0700
                     Fax: (801) 263-2487
13                   E-mail: slc@berrytripp.com

14

15   FOR FORGE INVESTMENTS UT, LLC:

16                   Sherilyn A. Olsen
                     John P. Harrington
17                   HOLLAND & HART, LLP
                     Attorneys at law
18                   222 South Main Street, Suite 2200
                     Salt Lake City, Utah 84101
19                   Telephone: (801) 799-5800
                     Fax: (801) 799-5700
20                   E-mail: solsen@hollandhart.com

21   FOR THE UNITED STATES TRUSTEE'S OFFICE:

22                   Peter J. Kuhn
                     UNITED STATES TRUSTEE'S OFFICE
23                   405 South Main Street, #300
                     Salt Lake City, Utah 84111
24                   Telephone: (801) 524-5734
                     Fax: (801) 524-5628
25                   E-mail: peter.j.kuhn@usdoj.gov

1    **FOR TED HEAP, ET AL.:**

2              **Jeffrey L. Shields**
           CALLISTER NEBEKER & McCULLOUGH
3          Attorneys at law
           10 East South Temple, #900
4          Salt Lake City, Utah 84133
           Telephone:  (801) 530-7374
5          Fax:  (801) 364-9127
           E-mail:  jls@cnmlaw.com

6

7    **FOR TRAVERSE MOUNTAIN ENTERPRISES, LLC:**

8              **Erik A. Olson**
           DURHAM JONES & PINEGAR
9          Attorneys at law
           111 East Broadway, #900
10         Salt Lake City, Utah 84111
           Telephone:  (801) 415-3000
11         Fax:  (801) 415-3500
           E-mail:  eolson@djplaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        P R O C E E D I N G S

2

3                THE COURT:  Good afternoon.

4                Please call the calendar.

5                THE CLERK:  This is in the matter of VS

6    Fox Ridge.

7                THE COURT:  Could I get appearances,

8    please.

9                MR. BOLEY:  Your Honor, Matthew Boley,

10   appearing on behalf of debtor, VS Fox Ridge, LLC.

11               MR. BERRY:  David Berry for the

12   Christensen debtors.

13               MS. OLSEN:  Sherilyn Olsen and John

14   Harrington of Holland & Hart, on behalf of Forge

15   Investments UT, LLC.

16               MR. KUHN:  Peter Kuhn, for the United

17   States Trustee.

18               MR. SHIELDS:  Your Honor, Jeffrey L.

19   Shields, on behalf of Ted Heap and multiple entities.

20               MR. OLSON:  Your Honor, Erik Olson for

21   creditor, Traverse Mountain Enterprises, LLC.

22               THE COURT:  Thank you.

23               Ms. Olsen, this is your motion.

24               MS. OLSEN:  Thank you, your Honor.

25               This is the time set for the motion to

1    clarify whether or not the automatic stay prohibits

2    Forge Investments from moving forward in State Court

3    cases in the -- pending before the Fourth District

4    Court relating to non-debtor parties.  There are two

5    pending actions.  One is called the -- we refer to as

6    the Mountain Home litigation.  One we refer to as the

7    Triumph litigation.

8         In the Mountain Home litigation, your

9    Honor, that is a judicial foreclosure, as well as a

10   breach of contract claim against the borrower and the

11   guarantors.  Mr. Christensen and VS Fox Ridge are

12   parties to that action.

13        The section action is -- and then there

14   are multiple other non-debtor parties.

15        And then in the Triumph litigation, that

16   is a deficiency action where Mr. Christensen and VS

17   Fox Ridge are also defendants.  And that is

18   guarantors, not as borrowers.

19        In the Mountain Home litigation they're

20   also in there as guarantors and not as owners of the

21   property or as the borrower.

22        Your Honor, we -- as Forge, we're moving

23   forward with those actions.  And when the bankruptcy

24   filing came, the TM parties and the debtor filed

25   notices of application to stay.  Forge took the

1    position that the stay did not apply as to the

2    non-debtor parties but the claims were now bifurcated

3    and we could proceed forward against all non-party

4    parties but no longer pursue our claims against the

5    two debtors.  The State Court asked us to come back

6    to the Bankruptcy Court and clarify whether or not

7    the stay applies.  And in the alternative, seek

8    relief from the stay.  That is the predecessor --

9    precursor to the motion that we have pending before

10   the Court that is to be heard today.

11              One issue I wanted to address regarding

12   notice, your Honor.  We noticed the motion to the 20

13   largest creditors of VS Fox Ridge and to all ECF

14   parties and to all parties who requested notice.

15   However, the motion did not go out to the 20 largest

16   on the Christensens' personal case.  That was an

17   error on our office's part.  However, several of the

18   parties are the same.  There are a few parties who

19   did not receive it who are on the Christensens' 20

20   largest.  If this Court believes the stay does not

21   apply, which is our primary position, your Honor,

22   then we do not believe that notice issue becomes an

23   issue.  If the Court believes the stay applies and

24   that this is, in fact, a motion for relief from stay,

25   then we ask that the Court grant the motion for

1    relief as it relates to VS Fox Ridge and then we will

2    go ahead and schedule a hearing 17 days out on the

3    Christensens' bankruptcy case.

4              We have received only two responses.  One

5    is from the debtors and one is from the TM parties.

6              In the debtors' response, your Honor, they

7    do not object and they take the affirmative position

8    that the stay does not apply to Forge Investments

9    moving forward in the State Court action against the

10   non-debtor parties.

11             As it relates to the TM parties, they take

12   no position on whether or not the stay applies, but

13   they say instead, your Honor, if -- if you're going

14   to let them go forward, you have to let us go

15   forward, too.  In affect, trying to hold our motion

16   hostage until their motion for relief from stay is

17   heard.

18             They did finally file their motion for

19   relief from stay yesterday, but -- or late the night

20   before that, but a preliminary hearing only is

21   scheduled and not until October 10th.  And at that

22   point in time if there are objections filed, which we

23   anticipate there will be by the debtors, then another

24   hearing sometime in the future will be held.

25             We believe there is no opposition to the

 1   position that Forge is entitled to move forward

 2   because the stay does not apply as to the claims

 3   against the non-debtor entities in the State Court

 4   cases.  And we ask that the Court enter an order

 5   clarifying the stay on that issue.

 6          THE COURT:  Is there anything material

 7   happening in either of the State Court actions in the

 8   next 30 days?

 9          MS. OLSEN:  What we have going on, your

10   Honor, is on the 21st there's a hearing before Judge

11   Taylor.  There are three pending motions before the

12   Court in the State Court action.  There's a motion to

13   consolidate the two State Court actions into one.

14   There is a motion to amend the pleadings by the TM --

15   TM parties to allege a counterclaim against Forge.

16   And this is important, your Honor.  One of the

17   primary reasons they want to hold us hostage --

18          THE COURT:  Go back and do that again.

19          MS. OLSEN:  Okay.  Three motions that are

20   currently pending:  motion to consolidate, motion for

21   summary judgment on the --

22          THE COURT:  Motion to consolidate both of

23   those actions?

24          MS. OLSEN:  Both of the State Court

25   actions into one.

1              THE COURT:   And whose motion is that?

2              MS. OLSEN:   That is Forge's motion.

3              THE COURT:   Okay.

4              MS. OLSEN:   The second motion is a motion

5     for summary judgment on the deficient -- on the

6     Mountain Home case, on the foreclosure and action

7     relating to liability and ability -- and ownership of

8     the property to foreclose.  That's been fully

9     briefed.  And the third motion that's pending is a

10    motion by the TM parties to amend their answer to

11    include a counterclaim.  It's this conspiracy theory

12    that forms the basis of everything they're asking

13    this Court to do.

14              And it's important for the Court to note

15    that the motion to amend only relates to bringing a

16    counterclaim against Forge.  There's factual

17    allegations that relate to Mr. Christensen

18    personally, but not -- he is not a party to the

19    proposed counterclaim, nor does -- do they pray for

20    relief against the debtor in this motion to amend

21    that's pending before the Court.

22              Those are the three motions that are

23    pending before the Court.  There is a hearing

24    scheduled before Judge Taylor.  We're hopeful he will

25    address all three of those motions, at a minimum, the

```
 1   motion to amend -- the motion to consolidate, your

 2   Honor.

 3              That's the current status of the State

 4   Court action.

 5              One of the reasons why we believe the

 6   Court should take action today is because throughout

 7   the period of time on the State Court action there

 8   has been nothing but delay, delay, delay by the

 9   borrower and the defendants on what are clear claims

10   as to liability under notes, and that the notes have

11   been in default for the last three years, one of

12   which is holding up the foreclosure of property.  And

13   so we believe that those bases justify moving forward

14   now.

15              Your Honor, we could not -- we didn't have

16   standing to bring relief from stay on their behalf.

17   If their claims were so important, if they were in

18   such a hurry, they've had notice of this bankruptcy

19   case since June 6th and waited all the way until two

20   days before this hearing to bring their motion.

21              THE COURT:  The cases were filed on June

22   20th --

23              MS. OLSEN:  June --

24              THE COURT:  -- is that correct?

25              MS. OLSEN:  June.  Okay.  And they have
```

1   taken no action until two days before this hearing to

2   seek their own motion for relief from stay.  And not

3   only have they sought that, but they've sought it on

4   the slow step process of having a preliminary hearing

5   first on a regular law motion date, which happens to

6   be the same time that we already have their 2004

7   scheduled for.  And then we'll have to schedule final

8   hearing sometime later in the future.

9          So that's the status, your Honor.  We

10  believe that the Court, because the stay does not

11  prohibit us from moving forward or act as a stay

12  automatically to protect non-debtor parties who are

13  co-obligors on debts, we should be allowed to move

14  forward.

15         THE COURT:  All right.  Well, let me --

16  let me ask you -- and I'll give Mr. Boley and Mr.

17  Berry a chance to respond as well -- if I were to

18  grant your motion and then subsequently grant Mr.

19  Shields' clients' motion, then he's pursuing all

20  counter parties and you're only going against those

21  other than the debtors?

22         MS. OLSEN:  Correct, your Honor.  Our

23  claims only implicate non-debtors.

24         THE COURT:  Then would I expect you to

25  come back in here and say, "Now we want relief as to

1    VS Fox Ridge and the Christensens"?

2              MS. OLSEN:  We have claims against VS Fox

3    Ridge and the Christensens, your Honor.  We don't

4    believe it's necessary for us to get relief from stay

5    to pursue those claims either.  We can deal with that

6    in the bankruptcy case by filing proofs of claim.

7              THE COURT:  All right.  Let me ask, Mr.

8    Kuhn, does the U.S. Trustee have a position on this

9    motion?

10             MR. KUHN:  We do not, your Honor.

11             THE COURT:  Thank you.

12             MR. KUHN:  No opposition.

13             THE COURT:  And no opposition to this

14   particular motion by either of the debtors; is that

15   correct?

16             MR. BOLEY:  That's correct, your Honor.

17             I just want to make -- give the Court my

18   quick thought, which is I think this is a -- has a

19   simple answer, is the Court should clarify the

20   automatic stay does not apply to non-debtors.  That

21   allows Forge to continue pursuing the TM parties, and

22   allows the TM parties to pursue their claims against

23   Forge if the State Court permits.  And the debtors

24   don't need to be involved in any of that.

25             So I think that's the -- the simple

1   solution here.

2          THE COURT: All right. But the other shoe

3   has dropped now. You -- you know Mr. Shields has

4   filed his motion and that's going to require a

5   response by the debtors.

6          MR. BOLEY: And the debtors will oppose

7   that motion.

8          What -- essentially what that motion asks

9   -- and I haven't even -- I haven't read it, but I

10  understand it to say, based on third-party

11  conversations, is they want to bring a new lawsuit

12  that's never been previously filed against the

13  debtors in State Court. So they want relief from

14  stay to pursue a State Court complaint against the

15  debtors. And the debtors will oppose that.

16         We think if there are claims against the

17  debtors, they should be presented here. And claims

18  against the debtors should be resolved through the

19  Bankruptcy Court claims process, not through --

20  through State Court litigation. Otherwise, we would

21  have hundreds of State Court lawsuits to -- to deal

22  with. Every creditor would want to go to State Court

23  to liquidate their claims and prove their claims.

24  The debtors don't have enough money to defend them

25  all.

1      THE COURT:  But that -- their assets --

2   their claims, asset claims, are tied up in those

3   lawsuits?

4      MR. BOLEY:  The -- the debtors have

5   essentially two assets.  One are claims against the

6   TM parties and against Mr. Howcroft.  But those

7   aren't pending in the -- in this lawsuit.  They're --

8   they're pending before other courts.  And if I

9   understand the rulings in the State Court correctly,

10  absent a favorable appeal, the only claims the

11  debtors really have are now against Mr. Howcroft in

12  -- in front of Judge Toomey.

13      The debtors' other claims are their

14  ownership interests in the TM entities themselves.

15  That are -- they want to take -- they want to use the

16  very assets that the debtors have an interest in to

17  -- to litigate against the debtors.

18      And I'll just go back to my first

19  statement, which is, the simple thing is the Court

20  just clarify the automatic doesn't apply to

21  non-debtors.  And we'll deal with this other motion

22  when it comes up.  The debtors do intend to oppose

23  it.

24      THE COURT:  All right.  Your position is a

25  little bit contrary to the notice that Mr. Berry

1    filed in the State Court action.

2                MR. BOLEY:  I will let Mr. Berry speak to

3    that notice.  But I -- I wonder if there was a

4    confusion in his office because there's no co-debtor

5    stay in a Chapter 11 case.

6                THE COURT:  Which is the first thing that

7    leapt out at me.

8                MR. BOLEY:  Yeah.  So I -- I'll let Mr.

9    Berry -- when I saw it, I -- my assumption was there

10   was just an error in his office and maybe a Chapter

11   13 form had been filed in -- as an oversight.

12                I'll let Mr. Berry address that.

13                MR. BERRY:  Your Honor, in this --

14                THE COURT:  Mr. Berry, what I'm referring

15   to specifically is your July 11th, 2012 filing in the

16   case before Judge Taylor in the Fourth District Court

17   for the State of Utah where you say, "Furthermore,

18   Stephen Christensen, pursuant to 11, U.S.C., Section

19   105, claim and invoke the co-debtor stay pending

20   confirmation of a Chapter 11 plan, as the entry of

21   judgment against any and all co-obligors would

22   interfere with and undermine the Chapter 11

23   reorganization of debtors, Stephen and Victoria

24   Christensen."  And then you cite some cases.

25                MR. BERRY:  We would withdraw the -- I

1    mean, we have said we have no objection in this case.

2    On further review, and admittedly that was very early

3    on in this case, and in particular, in reviewing the

4    documents attached by Forge in this case in their

5    pleadings, it becomes apparent that as to Forge's

6    motion, they are trying to liquidate claims which

7    need to be done -- needs to be done.  And even more

8    importantly, to foreclose on properties, realize the

9    value of those properties, which would help liquidate

10   the remaining, if any, outstanding guarantee of the

11   debtors herein.

12          The property that they seek to liquidate

13   does not belong to either of the debtors before the

14   Court, and they make that point in their brief.  And

15   as far as we can tell, it's absolutely true.  We have

16   no quibble with that assertion.  They have liquidated

17   one property, are seeking to liquidate additional

18   property, but none of that property actually belongs

19   to these two debtors.  And so we actually now believe

20   that it is necessary to allow that liquidation to

21   occur because it would help resolve the amount of

22   remaining debt that would be due under the guarantee

23   of the debtors herein.

24          And so we actually view at this point,

25   after having reviewed pleadings, having reviewed the

1    documents, that it is actually necessary to allow

2    Forge to liquidate their claims.

3               THE COURT:  All right.  So you agree that

4    your statement in this July 11th filing before Judge

5    Taylor is not a correct statement of the law?

6               MR. BERRY:  We would at this time, yes,

7    your Honor.

8               And I think the Court pretty much ruled on

9    that at the motion brought by Mr. Olson for Traverse

10   Mountain Enterprises when it entered its order two

11   days ago, I guess, the hearing of -- of a couple of

12   weeks ago.  The order was entered on September 10th.

13   Pretty much overruling everything that had been

14   previously brought before the Court.  And -- and

15   actually overruled the same arguments that -- that

16   the opposition here today is bringing again.

17              But, yes, we do not believe there is any

18   reason to stand in the way of Forge's motion as

19   before the Court.

20              THE COURT:  Thank you.

21              Mr. Shields.

22              MR. SHIELDS:  Thank you, your Honor.

23              Jeffrey L. Shields, on behalf of Ted Heaps

24   and there's multiple entities, I think, in our papers

25   we call the "TM defendants."  I think there's nine

1   defendants there.

2            But let me just start with some of the

3   procedural issues which may resolve this.

4            We believe that the Forge motion is

5   defective.  This is a jointly administered case.

6   Bankruptcy Rule 4000(a)(1) says that when there's no

7   unsecured, (inaudible) can be appointed, which is

8   there not in this case.  You have to serve the motion

9   for relief from stay on the 20 largest creditors.

10  Now Forge, I don't know if it was by design or

11  mistake, but they only served the creditors in one of

12  -- one of the two jointly administered cases.  And

13  Ms. Olsen discounts the fact that -- let me tell you

14  the parties who have not received notice.  These are

15  -- these are the -- on the list of the 20 largest

16  creditors in the Stephen and Victoria Ann Christensen

17  case:  America First Credit Union, America Express.

18  Diane Lefrandt, Intermountain Healthcare -- they're

19  listed three different times with a few different

20  claims, but different addresses, some of them are

21  different, some are the same -- the Internal Revenue

22  Service, Traverse Mountain Enterprises, Utah State

23  Tax Commission, Wells Fargo Bank.  So there's one,

24  two, three, four, five, six, seven, eight, nine, ten

25  creditors who have not received notice of Forge's

1    motion.

2              We would have raised this in our

3    opposition, but I didn't catch it until two days ago

4    when we were filing our motion.  My staff said, "Who

5    should we send this to?"

6              And I said, "Well, just use the same one

7    Forge did."  And then I looked.  I said, "No.  No.

8    This is way incomplete."  And I -- I notified Forge's

9    counsel last night that we noted this error.

10             And I think for that reason alone this

11   Court should continue the hearing on Forge's motion,

12   have it held the same date as ours.

13             But substantively -- I don't want to -- I

14   don't want to rely on procedure here, your Honor.  I

15   want to go to the substance.

16             Mr. Boley pretends that it's only Mr.

17   Berry who has taken the position that the stay

18   applies to non-debtors.  And that is not true.  I've

19   got -- I know there's a lot of facts in this case.

20   And I don't want to bore the Court.  If I'm getting

21   too factual, you cut me off.  But there is -- there

22   are three cases involved here.  There's a case before

23   Judge Toomey in Salt Lake, Third District Court.

24   That case is critical because that's where some

25   evidence has been discovered about the conspiracy

1   between the movants today and the debtors.  That

2   evidence is subject to a protective order.  One of

3   the hearings that was set to go forth just the day or

4   two after the bankruptcy petition was filed was the

5   motion to amend that protective order to allow my

6   clients to use that evidence in the cases in which

7   Forge is the plaintiff.  And the debtors took a very

8   strong position, both Mr. Berry and Mr. Boley, that

9   that matter is stayed.  I'll -- I'll quote to the

10  Court -- and again, I don't want to waste your time.

11  If this is too much, you cut me off.  But let me have

12  the Court look to Docket Number 67.3.  It's in our

13  papers attached to Exhibit C.  And that is the

14  pleading that my clients filed in State Court to

15  bring this matter before your Honor.  You'll recall

16  Forge's position was that the stay didn't apply, they

17  could just plow ahead against non-debtors.  And both

18  Judge Taylor and Judge Laycock have issued orders,

19  which we've attached to our papers, saying, "No.

20  That is not the case.  We need to get relief from

21  stay before we can proceed in this case."  Because

22  this is a complicated matter with lots of parties and

23  they just didn't want to waste time on getting

24  halfway through the case and say, "Oh, someone

25  violated the stay."

1          But if you'll look at the 67-3, page 13 of

2     38, that is the exhibit to our papers.  And it's a

3     notice of bankruptcy, filed by Mr. Berry in the --

4     this case.  And in the last paragraph of that

5     statement he said -- this is independent of this 105

6     co-debtor stay.  He says, "Please be advised that the

7     commencement and continuation of the above-entitled

8     actions, to the extent they seek relief against the

9     debtor, in violation of 362, failure to abide by the

10    foregoing provisions will be deemed a willful

11    violation of the United States Bankruptcy Code, which

12    will be brought to the attention of the United States

13    Bankruptcy Court for appropriate sanctions."

14          Now you have to go to the next couple of

15    pleadings.  There's some e-mail exchanges that say

16    his position is, if you do anything against

17    non-debtors that affects the debtors, then,

18    therefore, you're violating the stay against the

19    debtor.

20          I would refer your Honor next to the

21    e-mail.  It's page 18 of 38 of Exhibit C of the

22    pleading we filed, Document 67-3.  This is an e-mail

23    from LeVar Christensen to Sammi Anderson, who was

24    counsel for my clients in the Judge Toomey case that

25    had the motion for the protective order scheduled in

1    the next several days.  And he says in there that the

2    "stay should continue to the July 5th hearing."

3           And -- and Sammi Anderson had written to

4    him and says -- this is on the middle of that page --

5    "Although proceedings against those parties are

6    stayed pursuant to the automatic stay, at least for

7    the time being, it seems we should still go forward

8    on the attorney's fees motion as against McKay

9    Christensen and Chris Christensen, non-debtors, as

10   well as SJ Fox Ridge, also a non-debtor.  At a

11   minimum we should be able to get the protective order

12   issues resolved."

13          And LeVar writes back.  He says, "No.  The

14   stay applies to all those non-debtors."

15          My page 23 of 38, on that same document,

16   67-3, is a pleading filed by Mr. Boley in the Judge

17   Toomey case.  He didn't just file in Bankruptcy, he

18   filed a pleading in that case on behalf of the

19   debtors.  And in the middle of page 2 of that

20   pleading, which is page 24 of 38 he says, quote, "In

21   short, all proceedings in the above-captioned lawsuit

22   involving VS Fox Ridge and/or Stephen and Victoria

23   Christensen are statutorily enjoined and

24   automatically stayed."  And then he cites cases

25   saying that if you violate this, you're going to be

1    in violation of the court orders and -- and be

2    sanctioned.

3                Then further on down that page he has in

4    all caps and bolded, "The above-captioned Court

5    should not make or enter any rulings, findings,

6    orders, judgments, et cetera, against the debtors or

7    that might prejudice the debtors under the doctrines

8    of claim preclusion or issue preclusion."

9                So Mr. Boley himself is stating, "If you

10   proceed with this litigation, Judge Toomey, even the

11   minor issue of getting a protective order amended,

12   that could be claim -- claim preclusion or issue

13   preclusion.  I'm citing the automatic stay as cause

14   to stop that hearing."

15               THE COURT:  Okay.  These cases were filed

16   on June 20th.

17               MR. SHIELDS:  July 2nd, actually.

18               THE COURT:  No --

19               MR. SHIELDS:  Oh -- oh, excuse me.  The

20   petitions were filed?

21               THE COURT:  Yes.

22               MR. SHIELDS:  Yeah.  Yeah.

23               THE COURT:  Right.

24               MR. SHIELDS:  Yeah.  Excuse me.  This

25   pleading was filed July -- you're right.  The

1    petitions I think were June 20th.

2                    THE COURT:  All right.  And --

3                    MR. SHIELDS:  So --

4                    THE COURT:  -- you -- your clients didn't

5    move for relief until the last 48 hours?

6                    MR. SHIELDS:  That's correct.

7                    THE COURT:  Why?

8                    MR. SHIELDS:  Because we wanted to see

9    what the debtor was going to do.  As you know, the

10   debtor took the position I need the stay as a

11   breathing spell to determine what I'm going to do in

12   the future of this case.  When we had the status

13   conference before I stood up and said, "I don't know

14   if this is a real reorganization or just a litigation

15   tactic."  But we wanted to see what the debtor was

16   going to do.  We would have loved to get on with that

17   litigation, particularly the motion to amend the

18   protective order.

19                    And I'm not through yet on quoting the --

20   the -- maybe I'm boring you, but --

21                    THE COURT:  You're not boring me.  I've

22   read the materials.

23                    MR. SHIELDS:  Okay.  That's why.  We were

24   waiting to see what the debtor was going to do.

25                    The -- that same pleading, on page 3,

1    again, the bold, caps says, "Please take further

2    notice" in bold cap, then it goes to normal type --

3    "any person who violates the automatic stay may be

4    held liable for actual damage, including costs,

5    attorney's fees, and in appropriate circumstances,

6    punitive damage and exemplary damage."

7              So that's the pleading that my client was

8    faced with should we proceed with this litigation.

9              So what happened is counsel for my clients

10   wrote a letter -- or actually, there is one more

11   pleading -- or one more e-mail that relates to that.

12   This is page 33 of 38, Document 67-3.  This is an

13   e-mail from Mr. Boley to Mr. Preston, who is counsel

14   for my clients in the Fourth District Court that's

15   referred to as the -- the Forge litigation.  I'm

16   quoting from page 1 of that e-mail, the fourth

17   paragraph.  "Among other reasons, your clients have

18   made serious allegations against VS Fox Ridge, LLC

19   and Stephen Christensen, collectively the debtors,

20   including that both debtors are part of a RICO

21   combination or conspiracy."

22             And then the next paragraph, "In contrast

23   to the rulings you cite, the most recent controlling

24   decision on the scope of the automatic stay espouses

25   a much more expansive view."

1           And so they would not even let us proceed

2     with the deposition of McKay Christensen, who again

3     is a non-debtor, totally contrary to -- to the

4     position the debtor is now take.

5           Page 37 of 38, Exhibit C, Document sixty

6     -- or yeah, Docket Number 67-3.  Another e-mail.

7     This is from Stan Preston to LeVar, counsel for the

8     debtors in that litigation.  Quote, "In accordance

9     with your position, you have informed me that you

10    intend to instruct McKay Christensen not to answer

11    any questions.  You've also indicated to me that

12    based upon your review of the documents your client

13    has gathered in response to the subpoenas, you

14    believe the production of documents would be subject

15    to the same limitations regarding the current scope

16    of the case, with the additional concern that most of

17    the documents are subject to a protective order in

18    the case before -- pending before Judge Toomey."

19          And so on the next page Mr. Christensen

20    writes back -- or actually, this was the predecessor

21    e-mail, but it lays out his -- his theories.  "The

22    issues and defenses are so integrated, and Stephen

23    Christensen has been in such a superior position to

24    know the facts and issues involved in this case that

25    McKay's focus, as reflected on your document request

1    is" -- excuse me -- "that McKay's role is extremely

2    limited and directly affected by the Chapter 11

3    filing."

4              So they are taking the position that even

5    going as to document production as to a non-debtor is

6    in violation of the stay.

7              And then the Court has already noted that

8    pleading on -- it's Document 67-4 to my papers, where

9    Mr. Berry, after all that other interchange, then

10   throws in, "Oh, by the way, this is a co-debtor

11   stay." Which he's now withdrawn, but he didn't

12   withdrawn until today. It was not an issue before

13   the hearing in the other case, I don't believe. That

14   was not an issue at all between the Howcroft case.

15             So three months later, after all these

16   depositions and these protective order motions have

17   been continued -- and the -- the protective order

18   motion is crucial to my clients. We have a -- a

19   defense and a counterclaim of conspiracy between the

20   debtors and Forge. And a lot of that documents is in

21   the Judge Toomey case. You might be aware of that

22   case. That case was started by the debtors for

23   violation of a settlement agreement that was entered

24   between my clients and the debtors years ago. The

25   debtors started that case three years ago. There's

1    been lots of trial motions.  My clients have won the

2    claims the debtors brought on summary judgment.  The

3    only thing that remains in that case is our claims

4    against them and the claim that Mr. Erik Olson's

5    client brought before your Honor two or three weeks

6    ago.  But the crucial part -- the reason we want

7    relief from stay of that is that we need to get the

8    documents from that case to use in our defense in the

9    Forge case.  And to grant the Forge motion only,

10   meaning, they can go litigate against us, we can't

11   get relief from stay to go get the documents needed

12   to defend ourselves, is patently unfair and

13   prejudicial to my client.

14              Let me just close with a couple other

15   quotes here.

16              You'll recall that the debtor did file a

17   response to this motion, and it is Docket Number 64,

18   in which contrary to all those e-mails and those

19   prior notices I take you, now the debtor is saying,

20   on the bottom of page 1 of Docket 64, "The debtors

21   agree that the statutory injunction under Section

22   362(a) of Title 11 of the United States Code does not

23   extend to and does not enjoin continuation of

24   proceedings against non-debtor."

25              Now that's -- that's just patently

1    inconsistent with the position they've taken with my

2    client for the past three months.

3           Finally, the last statement on that same

4    pleading, document -- Docket 64, "Such order may be

5    entered without the debtors' review, endorsement,

6    approval or opportunity to object."

7           Again, I just think this is evidentiary of

8    the conspiracy between Forge and my clients.  They're

9    working with Forge to have the stay lifted so they

10   can litigate with me, but they get the benefit of the

11   stay, including the not letting us have documents

12   that we need in the Judge Toomey protective order

13   case.

14          My clients are not unwilling to proceed to

15   litigation.  In fact, I had to call my clients off.

16   When I got involved right at the bankruptcy filing,

17   State counsel, in both the Judge Toomey litigation

18   and the Forge litigation, desperately wanted to

19   proceed.  And I'm the one -- I have more bankruptcy

20   expertise.  That's why I was brought on.  I says, "I

21   think the safe thing to do is take the position --

22   because the debtor is taking that position -- that --

23   whether the stay applies or not" -- I've never taken

24   the position that the stay applies.  Even in our

25   pleadings I've filed before your Honor we said,

1   "We're not taking the position."  I know the debtor

2   took the position.  Now they've retreated from that

3   position.  I said, "The best thing to do is go get

4   relief from stay and get it clarified."

5          Ultimately, both Judge Taylor and Judge

6   Laycock agreed.  And they have orders attached to the

7   pleading I filed a couple days ago.  I don't know if

8   your Honor's had to look at those.  But there's

9   written orders from both those judges.  And they say,

10  "It is absurd to proceed on this case until we get

11  relief from stay of all of the parties, including the

12  debtors."  There's property involved in which the

13  debtors have guaranteed.  My clients have guaranteed

14  the debt.  Because it's a real property issue, you've

15  got to get the foreclosure done.  Then you've got to

16  determine the deficiency issues.  And you also have

17  to determine our counterclaim, which is part of our

18  defense.

19          So they -- they expressly said -- if you

20  look at Judge Taylor he said, "These cases are too"

21  -- he -- he calls the debtors an "indispensable

22  party" under Rule 19.  You know, you've got to have

23  that party there before you can proceed.  Even if you

24  were to grant the relief that Forge asks without

25  considering ours, I think Judge Taylor's going to

1   say, and we're going to argue, "You can't proceed

2   without the debtors.  We've got to have the debtors'

3   relief."

4          Now we have asked for that relief.  We

5   recognize that our motion has been filed not

6   sufficiently prior to this hearing that people should

7   be bound by this.  But if Forge is genuine about

8   getting on with that, they ought to agree to our

9   motion and let's go forward.  But I -- I hear from

10  the debtor today that they're going to oppose that

11  motion, which is odd, when they've taken the position

12  now that the stay doesn't apply to Forge but it

13  should apply to my clients.

14          Let me -- and let me conclude with the

15  following:  In response to arguments by counsel there

16  -- Ms. Olsen said there's only two actions.  There's

17  actually three.  I mentioned that Toomey action.

18  That's very critical.  We have asked the Court, lift

19  the stay to let us get on with that Toomey action.

20          Can't read my own writing.  I'm sorry,

21  your Honor.  I'll move on.

22          We didn't -- we did not schedule this

23  motion on any type of slow track.  We did what you

24  have to do.  I think you schedule a preliminary

25  hearing.  There's no opposition.  We can have that

1    relief without opposition.  We'd submit an order as

2    promptly as we could to get this order lifted -- I

3    mean, to get the stay lifted to proceed with the

4    litigation.

5              THE COURT:  Well, I can fix that easy

6    enough.

7              MR. SHIELDS:  Yeah.  Mr. Berry -- or

8    excuse me.  I guess it's Mr. Boley said that he

9    hasn't read our motion, but he's been told that we

10   want to initiate new litigation.  That's absurd.

11   We're not asking for any new litigation.  We've got

12   more litigation with this debtor than we know what to

13   do with.  We just want relief from stay to proceed

14   with the litigation that's already filed.  And I

15   would suggest that not reading a motion, then

16   representing what it says is not an appropriate

17   argument before this Court.  And it certainly

18   mischaracterizes my client's position.

19             THE COURT:  I didn't -- well, I -- I

20   certainly didn't see in your motion a request to

21   commence a new action.

22             Was there a request in there to file any

23   additional claims against the Christensens or VS Fox

24   Ridge?

25             MR. SHIELDS:  No.  I think the claims are

1   all out there.  I think we need relief from the stay

2   so that we can -- let's see.  If -- if we get our

3   motion to amend the counterclaim, then Christensens

4   could be a defendant in that one, the counterclaim

5   for conspiracy, because they're one of the

6   contractors.

7               MR. BOLEY:  Your Honor, that's not the way

8   the pleading's written right now.

9               MR. SHIELDS:  Well --

10              MR. BOLEY:  It's only against Forge.

11              And -- and I've just recalled, it wasn't

12  -- it was what I read in the TM parties' response

13  that perked my memory, what they said they

14  anticipated filing the motion for.  So I apologize.

15              MR. SHIELDS:  Our motion is for relief

16  from stay as to the debtors in all pending

17  litigation.  And similar to the motion you granted as

18  to Erik Olson and -- and his client, was not to

19  litigate and get a judgment and start enforcing the

20  judgment, to litigate, get a liquidation of the

21  claims and bring them back to your Honor.  These

22  claims have to be liquidated.  And I'm not here to

23  argue the merits of our motion.  I -- I'll argue that

24  at -- on October 10th if we need to.

25              But we believe when you -- when you look

1    at our motion and consider the merits of it, it

2    clearly should be granted and it should be granted as

3    to the debtors and it should be granted as to

4    non-debtors.  So we don't want to have any games

5    with, oh, it may effect me, it may be claim

6    preclusion or issue preclusion.  We need full

7    litigation.  What we don't need is litigation with

8    one arm tied behind our back where we can't use

9    documents or make arguments that need to be made in

10   the conspiracy case.

11            Unless your Honor has any questions,

12   that's all I have.

13            THE COURT:  All right.  There is, based

14   upon the admission of Counsel, a small procedural

15   issue with the relief that's been requested as to the

16   Christensens.  What I'm going to do is continue this

17   hearing in conjunction with a final, not a

18   preliminary, hearing on the motion made by Mr.

19   Shields' clients.

20            And -- and Ms. Olsen, Mr. Harrington, I

21   apologize for slowing you up a little bit in State

22   Court, but I -- I think we should get this resolved

23   -- these two matters resolved together so that the

24   parties can proceed unfettered to liquidate all the

25   claims, if that's my decision on the motion made by

1    Mr. Shields' client.

2            So what I'm going to do is set it for an

3    evidentiary hearing -- although, preliminarily, I

4    don't see why, Ms. Olsen, your clients need an order,

5    except for the fact that both of the debtors have

6    muddied the waters in the State Court litigation with

7    the filings they made.  So I'm going to continue this

8    to 9:00 a.m. on Thursday, October 11th and allow you

9    to provide notice to the parties that haven't

10   received notice yet, Ms. Olsen.

11           It's my intent that if there's no

12   substantive material objection by any of those

13   parties to grant the relief you've requested and to

14   make it affirmative relief so that none of the State

15   Court judges are -- have any concerns about what they

16   can and can't do.  So it'll probably be an

17   affirmative relief from stay.

18           MS. OLSEN:  Okay.

19           THE COURT:  So I don't think you have to

20   get ready for any evidence, other than if you want to

21   oppose anything that Mr. Shields is going to throw

22   out there.

23           Mr. Shields, so we'll strike the

24   preliminary hearing on October 10th.  We'll just go

25   to trial on this on the 11th, at 9:00 a.m.

1        MR. SHIELDS:  Perfect.

2        THE COURT:  What I'd like you to do is

3    work -- since the debtors have indicated they're

4    going to oppose it, I'll want to -- want you to work

5    with them to come up with some schedule for exchange

6    of the same information you'd be required to exchange

7    under Rule 26 within ten days.  No.  That's not going

8    to work.  That's a Sunday.  So by Monday, September

9    24th.

10        MR. SHIELDS:  Okay.

11        THE COURT:  -- notify each other who your

12   witnesses are, what your documents are going to be.

13   And then provide an original set of exhibits and two

14   sets of copies -- anybody who's going to submit

15   exhibits -- by Tuesday, the 9th of October, so that I

16   have a chance to review those before the hearing.

17        MR. SHIELDS:  Thank you.

18        THE COURT:  And the debtors' actual

19   response is due on October 1st, but you're going to

20   need to accelerate the preparation for the hearing

21   before that.  So I won't change the deadline for any

22   written opposition to the motion, but you're going to

23   need to start to get together your witnesses and

24   exhibits before that.

25        MR. SHIELDS:  I think the exchange --

1    subject to their written -- I think we know the

2    issues, but if they file something in their written

3    objection that we hadn't anticipated, I think we can

4    amend at that time.  I don't think it'll be

5    substantive, but --

6              THE COURT:  Well, that'll give you over a

7    week ahead of time, yeah.

8              So the minute entry on this discrete

9    matter will simply reflect that the matter's

10   continued to October 11th.  And again, it's my

11   intention to grant the relief requested at that time,

12   subject to any objections based upon the parties who

13   haven't received notice yet.

14             MS. OLSEN:  Thank you, your Honor.

15             MR. BERRY:  Your Honor, if I understand

16   that, then the objection before the Court today,

17   brought by Mr. Shields, is overruled?

18             THE COURT:  All he was saying was I want

19   to have -- I want to have you hear my matter first.

20   And by my scheduling of the matters, I'm addressing

21   that.  So there's nothing to overrule.

22             MR. BERRY:  Would there be anything wrong

23   with --

24             THE COURT:  There will be no order entered

25   at this time.

1          The other thing on the calendar was the

2     continued status conference.  The debtors filed about

3     -- sometime within the last two hours -- a report

4     indicating that they -- as I read it, they think they

5     can have a plan filed within 30 days?

6          MR. BERRY:  Yes, your Honor.

7          THE COURT:  All right.  I appreciate the

8     information in the status report.

9          I'm going to continue the status

10    conference.  Again, how about November 6th at 10:00

11    a.m., that's a Tuesday.  And we'll be beyond the

12    point at which I directed the debtors to file their

13    tax returns at that point.  And we'll be beyond the

14    deadline that the debtors have offered to file a Plan

15    and Disclosure Statement.  And so I think that would

16    be a good time to take another look at the case.

17         MR. BERRY:  Yes, your Honor.

18         THE COURT:  All right.  So the status

19    conference will be continued to November 6th at 10:00

20    a.m.

21         Any other -- anything else you want to add

22    to that, Mr. Kuhn?

23         MR. KUHN:  Your Honor, the monthly

24    financials were delinquent.  They have -- were also

25    filed.  We do have an issue with -- there's a check

1   box -- maybe I'm misunderstanding, and I've talked to

2   Mr. Boley about that -- about waiver of a balance

3   sheet.  We didn't intend to waive any requirement for

4   a balance sheet.  So we're going to be asking him to

5   amend and provide balance sheets in the monthly

6   financial reports.

7           And that's the primary clarification.

8           THE COURT:  All right.  Well, we'll make a

9   note of that and we'll check that again on November

10  6th.

11          All right.  Thank you.

12          THE CLERK:  All rise.

13          (Court adjourned at 2:39 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

## REPORTER'S CERTIFICATE

STATE OF UTAH            )
                         )  ss.
COUNTY OF SALT LAKE      )

I, Kelly Fine-Jensen, Registered Professional Reporter and Notary Public in and for the State of Utah, do hereby certify:

That on September 14, 2012, I transcribed an audio file at the request of Holland & Hart, LLP;

That the testimony of all speakers was reported by me in stenotype and thereafter transcribed, and that a full, true, and correct transcription of said testimony is set forth in the preceding pages, according to my ability to hear and understand the audio file provided;

That the original transcript was sealed and delivered to the Bankruptcy Court for safekeeping.

I further certify that I am not kin or otherwise associated with any of the parties to said cause of action and that I am not interested in the outcome thereof.

WITNESS MY HAND AND OFFICIAL SEAL this 17th day of September, 2012.

KELLY FINE-JENSEN
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp. 08/06/2014
Commission # 600115

KELLY FINE-JENSEN, RPR
Notary Public
Residing in Salt Lake County

CITICOURT, LLC
801.532.3441

September 13, 2012

## #

**#200** [1] 2:11
**#300** [1] 2:23
**#900** [1] 3:10

## 1

**1** [2] 25:16 28:20
**10:00** [2] 38:10,19
**105** [2] 15:19 21:5
**10th** [4] 7:21 17:12 33:24 35:24
**11** [6] 15:5,18,20,22 27:2 28:22
**11th** [5] 15:15 17:4 35:8,25 37:10
**13** [2] 15:11 21:1
**14** [1] 40:8
**17** [1] 7:2
**17th** [1] 40:18
**18** [1] 21:21
**19** [1] 30:22
**1st** [1] 36:19

## 2

**2** [1] 22:19
**2:39** [1] 39:13
**20** [5] 6:12,15,19 18:9,15
**2004** [1] 11:6
**2012** [3] 15:15 40:8,18
**20th** [3] 10:22 23:16 24:1
**21st** [1] 8:10
**23** [1] 22:15
**24** [1] 22:20
**24th** [1] 36:9
**26** [1] 36:7
**265-0700** [1] 2:12
**2nd** [1] 23:17

## 3

**3** [1] 24:25
**30** [2] 8:8 38:5
**300** [1] 2:11
**33** [1] 25:12
**362** [1] 21:9
**362(a** [1] 28:22
**363-4378** [1] 2:6
**364-9127** [1] 3:5
**37** [1] 26:5
**38** [6] 21:2,21 22:15,20 25:12 26:5

## 4

**4000(a)(1** [1] 18:6
**405** [1] 2:23
**415-3500** [1] 3:11
**48** [1] 24:5

## 5

**524-5734** [1] 2:24
**5296** [1] 2:11
**5th** [1] 22:2

## 6

**64** [3] 28:17,20 29:4
**67-3** [5] 21:1,22 22:16 25:12 26:6
**67-4** [1] 27:8
**67.3** [1] 20:12
**6th** [4] 10:19 38:10,19 39:10

## 7

**799-5700** [1] 2:19

## 8

**801** [6] 2:6,12,19,24 3:5,11
**84101** [1] 2:18
**84111** [2] 2:5 3:10
**84133** [1] 3:4

## 9

**9:00** [1] 35:8,25
**9th** [1] 36:15

## A

**a.m** [3] 35:8,25 38:11,20
**abide** [1] 21:9
**ability** [1] 9:7
**able** [1] 22:11
**above-captioned** [2] 22:21 23:4
**above-entitled** [1] 21:7
**absent** [1] 14:10
**absolutely** [1] 16:15
**absurd** [2] 30:10 32:10
**accelerate** [1] 36:20
**accordance** [1] 26:8
**act** [1] 11:11
**action** [15] 5:12,13,16 7:9 8:12 9:6 10:4,6,7 11:1 15:1 31:17,19 32:21 40:16
**actions** [8] 5:5,23 8:7,13,23,25 21:8 31:16
**actual** [2] 25:4 36:18
**actually** [9] 16:18,19,24 17:1,15 23:17 25:10 26:20 31:17
**add** [1] 38:21
**additional** [3] 16:17 26:16 32:23
**address** [3] 6:11 9:25 15:12
**addresses** [1] 18:20
**addressing** [1] 37:20
**adjourned** [1] 39:13
**administered** [2] 18:5,12

**admission** [1] 34:14
**admittedly** [1] 16:2
**advised** [1] 21:6
**affect** [1] 7:15
**affected** [1] 27:2
**affects** [1] 21:17
**affirmative** [3] 7:7 35:14,17
**afternoon** [1] 4:3
**ago** [7] 17:11,12 19:3 27:24, 25 28:6 30:7
**agree** [3] 17:3 28:21 31:8
**agreed** [1] 30:6
**agreement** [1] 27:23
**ahead** [3] 7:2 20:17 37:7
**AL** [1] 3:1
**allegations** [2] 9:17 25:18
**allege** [1] 25:18
**allow** [4] 16:20 17:1 20:5 35:8
**allowed** [1] 11:13
**allows** [2] 12:21,22
**alone** [1] 19:10
**already** [3] 11:6 27:7 32:14
**alternative** [1] 6:7
**Although** [2] 22:5 35:3
**amend** [12] 4:18 9:10,15,20 10:1 20:5 24:17 33:3 37:4 39:5
**amended** [1] 23:11
**America** [2] 18:17,17
**Among** [1] 25:17
**amount** [1] 16:21
**and/or** [1] 22:22
**Anderson** [2] 21:23 22:3
**ANN** [2] 2:8 18:16
**another** [3] 7:23 26:6 38:16
**answer** [3] 9:10 12:19 26:10
**anticipate** [1] 7:23
**anticipated** [2] 33:14 37:3
**anybody** [1] 36:14
**apologize** [2] 33:14 34:21
**apparent** [1] 16:5
**appeal** [1] 14:10
**appearances** [1] 4:7
**appearing** [1] 4:10
**application** [1] 5:25
**applies** [7] 6:7,23 7:12 19:18 22:14 29:23,24
**apply** [9] 6:1,21 7:8 8:2 12:20 14:20 20:16 31:12,13
**appointed** [1] 18:7
**appreciate** [1] 38:7
**appropriate** [3] 21:13 25:5 32:16
**approval** [1] 29:6
**aren't** [1] 14:7

**argue** [3] 31:1 33:23,23
**argument** [1] 32:17
**arguments** [3] 17:15 31:15 34:9
**arm** [1] 34:8
**asks** [2] 13:8 30:24
**assertion** [1] 16:16
**asset** [1] 14:2
**assets** [3] 14:1,5,16
**assumption** [1] 15:9
**attached** [4] 16:4 20:13,19 30:6
**attention** [1] 21:12
**attorney's** [2] 22:8 25:5
**Attorneys** [4] 2:4,17 3:3,9
**audio** [1] 40:12
**automatic** [7] 5:1 12:20 14:20 22:6 23:13 25:3,24
**automatically** [2] 11:12 22:24
**aware** [1] 27:21

## B

**back** [8] 6:5 8:18 11:25 14:18 22:13 26:23 31:23 34:8
**balance** [3] 39:2,4,5
**Bank** [1] 18:23
**bankruptcy** [14] 5:23 6:6 7:3 10:18 12:6 13:19 18:6 20:4 21:3,11,13 22:17 29:16,19
**based** [4] 13:10 26:12 34:13 37:12
**bases** [1] 10:13
**basis** [1] 9:12
**becomes** [2] 6:22 16:5
**behalf** [6] 4:10,14,19 10:16 17:23 22:18
**behind** [1] 34:8
**believe** [12] 6:22 7:25 10:5, 13 11:10 12:4 16:19 17:17 18:4 26:14 27:13 33:25
**believes** [2] 6:20,23
**belong** [1] 16:13
**belongs** [1] 16:18
**benefit** [1] 29:10
**BERRY** [21] 2:10 4:11,11 11:17 14:25 15:2,9,12,13,14, 25 17:6 19:17 20:8 21:3 27:9 32:7 37:15,22 38:6, 17
**best** [1] 30:3
**between** [3] 20:1 27:14,19, 24 29:8
**beyond** [2] 38:11,13
**bifurcated** [1] 6:2

bit [2] 14:25 34:21
bold [2] 25:1,2
bolded [1] 23:4
Boley [18] 2:3 4:9,9 11:16 12:
   16 13:6 14:4 15:2,8 19:16
   20:8 22:16 23:9 25:13 32:
   8 33:7,10 39:2
bore [1] 19:20
boring [2] 24:20,21
borrower [3] 5:10,21 10:9
borrowers [1] 5:18
both [9] 8:22,24 20:8,17 25:
   20 29:17 30:5,9 35:5
bottom [1] 28:20
bound [1] 31:7
box [1] 39:1
breach [1] 5:10
breathing [1] 24:11
brief [1] 16:14
briefed [1] 9:9
bring [5] 10:16,20 13:11 20:
   15 33:21
bringing [2] 9:15 17:16
brought [7] 17:9,14 21:12 28:
   2,5 29:20 37:17

## C

calendar [2] 4:4 38:1
call [3] 4:4 17:25 29:15
called [1] 5:5
calls [1] 30:21
came [1] 15:24
cap [1] 25:2
caps [2] 23:4 25:1
case [40] 6:16 7:3 9:6 10:19
   12:6 15:5,16 16:1,3,4 18:5,
   8,17 19:19,22,24 20:20,21,
   24 21:4,24 22:17,18 24:12
   26:16,18,24 27:13,14,21,
   22,22,25 28:3,8,9 29:13
   30:10 34:10 38:16
cases [10] 5:3 8:4 10:21 15:
   24 18:12 19:22 20:6 22:24
   23:15 30:20
catch [1] 19:3
cause [2] 23:13 40:16
certainly [2] 32:17,20
CERTIFICATE [1] 40:2
certify [2] 40:7,15
cetera [1] 23:6
chance [2] 11:17 36:16
change [1] 36:21
Chapter [5] 15:5,10,20,22 27:
   2
check [2] 38:25 39:9
Chris [1] 22:9

CHRISTENSEN [17] 2:8 4:12
   5:11,16 9:17 15:18,24 18:
   16 21:23 22:9,9,23 25:19
   26:2,10,19,23
Christensens [5] 12:1,3 32:
   23 33:3 34:16
Christensens' [3] 6:16,19 7:
   3
circumstances [1] 25:5
cite [2] 15:24 25:23
cites [1] 22:24
citing [1] 23:13
City [4] 2:5,18 3:4,10
claim [8] 5:10 12:6 15:19 23:
   8,12,12 28:4 34:5
claims [29] 6:2,4 8:2 10:9,17
   11:23 12:2,5,22 13:16,17,
   19,23,23 14:2,2,5,10,13
   16:6 17:2 18:20 28:2,3 32:
   23,25 33:21,22 34:25
clarification [1] 39:7
clarified [1] 30:4
clarify [4] 5:1 6:6 12:19 14:
   20
clarifying [1] 8:5
clear [1] 10:9
clearly [1] 34:2
CLERK [2] 4:5 39:12
client [3] 25:7 26:12 28:5,13
   29:2 33:18 35:1
client's [1] 32:18
clients [17] 20:6,14 21:24 24:
   4 25:9,14,17 27:18,24 28:
   1 29:8,14,15 30:13 31:13
   34:19 35:4
clients' [1] 11:19
close [1] 28:14
co-debtor [4] 15:4,19 21:6
   27:10
co-obligors [2] 11:13 15:21
Code [2] 21:11 28:22
collectively [1] 25:19
combination [1] 25:21
come [3] 6:5 11:25 36:5
comes [1] 14:22
commence [1] 32:21
commencement [1] 21:7
Commission [1] 18:23
complaint [1] 13:14
complicated [1] 20:22
concern [1] 26:16
concerns [1] 35:15
conclude [1] 31:14
conference [4] 24:13 38:2,10,
   19
confirmation [1] 15:20

confusion [1] 15:4
conjunction [1] 34:17
consider [1] 34:1
considering [1] 30:25
consolidate [4] 8:13,20,22
   10:1
conspiracy [9] 9:11 19:25 25:
   21 27:19 29:8 33:5 34:10
continuation [2] 21:7 28:23
continue [6] 12:21 19:11 22:
   2 34:16 35:7 38:9
continued [4] 27:17 37:10
   38:2,19
contract [1] 5:10
contractors [1] 33:6
contrary [4] 14:25 26:3 28:
   18
contrast [1] 25:22
controlling [1] 25:23
conversations [1] 13:11
copies [1] 36:14
correct [6] 10:24 11:22 12:15,
   16 17:5 24:6
correctly [1] 14:9
costs [1] 25:4
counsel [8] 19:9 21:24 25:9,
   13 26:7 29:17 31:15 34:14
counter [1] 11:20
counterclaim [8] 8:15 9:11,
   16,19 27:19 30:17 33:3,4
COUNTY [2] 40:5,25
couple [4] 17:11 21:14 28:14
   30:7
COURT [102] 4:3,7,22 5:2,4 6:
   5,6,10,20,23,25 7:9 8:3,4,
   6,7,12,12,13,18,22,24 9:1,
   3,13,14,21,23 10:4,6,7,21,
   24 11:10,15,24 12:7,11,13,
   17,19,23 13:2,13,14,19,20,
   21,22 14:1,9,19,24 15:1,6,
   14,16 16:14 17:3,8,14,19,
   20 19:11,20,23 20:10,12,
   14 21:13 23:1,4,15,18,21,
   23 24:2,4,7,21 25:14 27:7
   31:18 32:5,17,19 34:13,22
   35:6,15,19 36:2,11,18 37:
   6,16,18,24 38:7,18 39:8,
   13
courts [1] 14:8
Credit [1] 18:17
creditor [4] 4:21 13:22
creditors [5] 6:13 18:9,11,16,
   25
critical [2] 19:24 31:18
crucial [2] 27:18 28:6
current [2] 10:3 26:15

currently [1] 8:20
cut [2] 19:21 20:11

## D

damage [3] 25:4,6,6
date [2] 11:5 19:12
David [1] 4:11
day [2] 20:3 40:18
days [10] 7:2 8:8 10:20 11:1
   17:11 19:3 22:1 30:7 36:7
   38:5
deadline [2] 36:21 38:14
deal [3] 12:5 13:21 14:21
debt [2] 16:22 30:14
debtor [16] 4:10 5:24 9:20 21:
   9,19 24:9,10,15,24 26:4
   28:16,19 29:22 30:1 31:10
   32:12
debtors [51] 4:12 6:5 7:5,23
   11:21 12:14,23 13:5,6,13,
   15,15,17,18,24 14:4,11,16,
   17,22 15:23 16:11,13,19,
   23 20:1,7 21:17 22:19 23:
   6,7 25:19,20 26:8 27:20,
   22,24,25 28:22 30:12,13,
   21 31:2 33:16 34:3 35:5
   36:3 38:2,12,14
debtors' [5] 7:6 14:13 29:5
   31:2 36:18
debts [1] 11:13
decision [2] 25:24 34:25
deemed [1] 21:10
default [1] 10:11
defective [1] 18:5
defend [2] 13:24 28:12
defendant [1] 33:4
defendants [4] 5:17 10:9 17:
   25 18:1
defense [3] 27:19 28:8 30:18
defenses [1] 26:22
deficiency [2] 15:6 30:16
deficient [1] 9:5
delay [3] 10:8,8,8
delinquent [1] 38:24
deposition [1] 26:2
depositions [1] 27:16
design [1] 18:10
desperately [1] 29:18
determine [3] 24:11 30:16,17
Diane [1] 18:18
different [4] 18:19,19,20,21
directed [1] 38:12
directly [1] 27:2
Disclosure [1] 38:15
discounts [1] 18:13
discovered [1] 19:25

discrete [1] 37:8
District [4] 5:3 15:16 19:23 25:14
Docket [5] 20:12 26:6 28:17, 20 29:4
doctrines [1] 23:7
Document [8] 21:22 22:15 25:12 26:5,25 27:5,8 29:4
documents [11] 16:4 17:1 26:12,14,17 27:20 28:8,11 29:11 34:9 36:12
done [3] 16:7,7 30:15
down [1] 23:3
dropped [1] 13:3
due [2] 16:22 36:19

### E

E-mail [10] 2:13,25 21:15,21, 22 25:11,13,16 26:6,21
e-mails [1] 28:18
each [1] 36:11
early [1] 16:2
East [1] 3:10
easy [1] 32:5
ECF [1] 6:13
effect [1] 34:5
eight [1] 18:24
either [4] 8:7 12:5,14 16:13
endorsement [1] 29:5
enforcing [1] 33:19
enjoin [1] 28:23
enjoined [1] 22:23
enough [2] 13:24 32:6
enter [2] 8:4 23:5
entered [5] 17:10,12 27:23 29:5 37:24
ENTERPRISES [4] 3:7 4:21 17:10 18:22
entities [4] 4:19 8:3 14:14 17:24
entitled [1] 8:1
entry [2] 15:20 37:8
Erik [4] 3:8 4:20 28:4 33:18
error [3] 6:17 15:10 19:9
espouses [1] 25:24
essentially [2] 13:8 14:5
ET [2] 3:1 23:6
even [7] 13:9 16:7 23:10 26:1 27:4 29:24 30:23
everything [2] 9:12 17:13
evidence [4] 19:25 20:2,6 35:20
evidentiary [2] 29:7 35:3
except [1] 35:5
exchange [3] 36:5,6,25
exchanges [1] 21:15

excuse [4] 23:19,24 27:1 32:8
exemplary [1] 25:6
Exhibit [4] 20:13 21:2,21 26:5
exhibits [3] 36:13,15,24
expansive [1] 25:25
expect [1] 11:24
expertise [1] 29:20
Express [1] 18:17
expressly [1] 30:19
extend [1] 28:23
extent [1] 21:8
extremely [1] 27:1

### F

faced [1] 25:8
fact [4] 6:24 18:13 29:15 35:5
facts [2] 19:19 26:24
factual [2] 9:16 19:21
failure [1] 21:9
far [1] 16:15
Fargo [1] 18:23
favorable [1] 14:10
Fax [4] 2:6,19 3:5,11
fees [2] 22:8 25:5
few [2] 6:18 18:19
file [8] 7:18 22:17 28:16 32:22 37:2 38:12,14 40:12
filed [23] 5:24 7:22 10:21 13:4,12 15:1,11 20:4,14 21:3,22 22:16,18 23:15,20,25 29:25 30:7 31:5 32:14 38:2,5,25
filing [8] 5:24 12:6 15:15 17:4 19:4 27:3 29:16 33:14
filings [1] 35:7
final [1] 11:7 34:17
finally [2] 7:18 29:3
financial [1] 39:6
financials [1] 38:24
findings [1] 23:5
Fine-Jensen [2] 40:6,24
first [5] 11:5 14:18 15:6 18:17 37:19
five [1] 18:24
fix [1] 32:5
focus [1] 26:25
following [1] 31:15
foreclose [2] 9:8 16:8
foreclosure [4] 5:9 9:6 10:12 30:15
foregoing [1] 21:10
Forge [27] 4:14 5:2,22,25 7:8 8:1,15 9:16 12:21,23 16:4

17:2 18:4,10 19:7 20:7 25:15 27:20 28:9,9 29:8,9,18 30:24 31:7,12 33:10
Forge's [7] 9:2 16:5 17:18 18:25 19:8,11 20:16
form [1] 15:11
forms [1] 9:12
forth [2] 20:3 40:11
forward [12] 5:2,23 6:3 7:9, 14,15 8:1 10:13 11:11,14 22:7 31:9
four [1] 18:24
Fourth [4] 5:3 15:16 25:14, 16
FOX [13] 2:2 4:6,10 5:11,17 6:13 7:1 12:1,2 22:10,22 25:18 32:23
front [1] 14:12
full [1] 34:6
fully [1] 9:8
further [4] 16:2 23:3 25:1 40:15
Furthermore [1] 15:17
future [3] 7:24 11:8 24:12

### G

games [1] 34:4
gathered [1] 26:13
genuine [1] 31:7
getting [4] 19:20 20:23 23:11 31:8
give [3] 11:16 12:17 37:6
got [7] 19:19 29:16 30:15,15, 22 31:2 32:11
grant [7] 6:25 11:18,18 28:9 30:24 35:13 37:11
granted [4] 33:17 34:2,2,3
guarantee [2] 16:10,22
guaranteed [2] 30:13,13
guarantors [3] 5:11,18,20
guess [3] 17:11 32:8

### H

halfway [1] 20:24
happened [1] 25:9
happening [1] 8:7
happens [1] 11:5
Harrington [3] 2:16 4:14 34:20
Hart [1] 4:14
Healthcare [1] 18:18
HEAP [2] 3:1 4:19
Heaps [1] 17:23
hear [2] 31:9 37:19
heard [2] 6:10 7:17
hearing [7] 2:20,24 8:10 9:23 10:20 11:1,4,8 17:11

19:11 22:2 23:14 27:13 31:6,25 34:17,18 35:3,24 36:16,20
hearings [1] 20:3
held [3] 7:24 19:12 25:4
help [2] 16:9,21
hereby [1] 40:7
herein [2] 16:11,23
himself [1] 23:9
hold [2] 7:15 8:17
holding [1] 10:12
Holland [1] 4:14
Home [4] 5:6,8,19 9:6
Honor [36] 4:9,18,20,24 5:9, 22 6:12,21 7:6,13 8:10,16 10:2,15 11:9,22 12:3,10, 16 15:13 17:7,22 19:14 20:15 21:20 28:5 29:25 31:21 33:7,21 34:11 37:14,15 38:6,17,23
Honor's [1] 30:8
hopeful [1] 9:24
hostage [2] 17:16 8:17
hours [2] 24:5 38:3
Howcroft [3] 14:6,11 27:14
However [2] 6:15,17
hundreds [1] 13:21
hurry [1] 10:18

### I

implicate [1] 11:23
important [3] 8:16 9:14 10:17
importantly [1] 16:8
inaudible [1] 18:7
include [1] 9:11
including [5] 25:4,20 29:11 30:11
incomplete [1] 19:8
inconsistent [1] 29:1
independent [1] 21:5
indicated [2] 26:11 36:3
indicating [1] 38:4
indispensable [1] 30:21
information [2] 36:6 38:8
informed [1] 26:9
initiate [1] 32:10
injunction [1] 28:21
instead [1] 7:13
instruct [1] 26:10
integrated [1] 26:22
intend [3] 14:22 26:10 39:3
intent [1] 35:11
intention [1] 37:11
interchange [1] 27:9
interest [1] 14:16

**interested** [1] 40:16
**interests** [1] 14:14
**interfere** [1] 15:22
**Intermountain** [1] 18:18
**Internal** [1] 18:21
**Investments** [3] 4:15 5:2 7:8
**invoke** [1] 15:19
**involved** [5] 12:24 19:22 26: 24 29:16 30:12
**involving** [1] 22:22
**issue** [13] 6:11,22,23 8:5 23: 8,11,12 27:12,14 30:14 34: 6,15 38:25
**issued** [1] 20:18
**issues** [6] 18:3 22:12 26:22, 24 30:16 37:2
**it'll** [1] 35:16 37:4

### J

**Jeffrey** [3] 3:2 4:18 17:23
**John** [2] 2:16 4:13
**jointly** [2] 18:5,12
**Judge** [19] 8:10 9:24 14:12 15:16 17:4 19:23 20:18,18 21:24 22:16 23:10 26:18 27:21 29:12,17 30:5,5,20, 25
**judges** [1] 30:9 35:15
**judgment** [6] 8:21 9:5 15:21 28:2 33:19,20
**judgments** [1] 23:6
**judicial** [1] 5:9
**July** [5] 15:15 17:4 22:2 23: 17,25
**June** [6] 10:19,21,23,25 23: 16 24:1
**justify** [1] 10:13

### K

**Kelly** [2] 40:6,24
**kin** [1] 40:15
**Kuhn** [8] 2:22 4:16,16 12:8, 10,12 38:22,23

### L

**Lake** [7] 2:5,18 3:4,10 19:23 40:5,25
**LAMAR** [1] 2:8
**largest** [5] 6:13,15,20 18:9, 15
**last** [6] 10:11 19:9 21:4 24:5 29:3 38:3
**late** [1] 7:19
**later** [2] 11:8 27:15
**law** [6] 2:4,17 3:3,9 11:5 17:5
**lawsuit** [3] 13:11 14:7 22:21
**lawsuits** [2] 13:21 14:3

**Laycock** [2] 20:18 30:6
**lays** [1] 26:21
**leapt** [1] 15:7
**least** [1] 22:6
**Lefrandt** [1] 18:18
**letter** [1] 25:10
**letting** [1] 29:11
**LeVar** [3] 21:23 22:13 26:7
**liability** [2] 9:7 10:10
**liable** [1] 25:4
**lift** [1] 31:18
**lifted** [3] 29:9 32:2,3
**limitations** [1] 26:15
**limited** [1] 27:2
**liquidate** [7] 13:23 16:6,9,12, 17 17:2 34:24
**liquidated** [2] 16:16 33:22
**liquidation** [2] 16:20 33:20
**list** [1] 18:15
**listed** [1] 18:19
**litigate** [5] 14:17 28:10 29:10 33:19,20
**litigation** [24] 5:6,7,8,15,19 13:20 23:10 24:14,17 25:8, 15 26:8 29:15,17,18 32:4, 10,11,12,14 33:17 34:7,7 35:6
**little** [1] 14:25 34:21
**LLC** [5] 2:2 3:7 4:10,15,21 25:18
**longer** [1] 6:4
**look** [6] 20:12 21:1 30:8,20 33:25 38:16
**looked** [1] 19:7
**lot** [2] 19:19 27:20
**lots** [2] 20:22 28:1
**loved** [1] 24:16

### M

**made** [5] 25:18 34:9,18,25 35:7
**Main** [1] 2:23
**material** [2] 8:6 35:12
**materials** [1] 21:19
**matter** [6] 4:5 20:9,15,22 37: 9,19
**matter's** [1] 37:9
**matters** [2] 34:23 37:20
**Matthew** [2] 2:3 4:9
**McKay** [3] 22:8 26:2,10
**McKay's** [2] 26:25 27:1
**mean** [2] 16:1 32:3
**meaning** [1] 28:10
**memory** [1] 33:13
**mentioned** [1] 31:17
**merits** [2] 33:23 34:1

**middle** [2] 22:4,19
**might** [2] 23:7 27:21
**minimum** [2] 9:25 22:11
**minor** [1] 23:11
**minute** [1] 37:8
**mischaracterizes** [1] 32:18
**mistake** [1] 18:11
**misunderstanding** [1] 39:1
**Monday** [1] 36:8
**money** [1] 13:24
**monthly** [2] 38:23 39:5
**months** [2] 27:15 29:2
**most** [2] 25:23 26:16
**motion** [67] 4:23,25 6:9,12,15, 24,25 7:15,16,18 8:12,14, 20,20,22 9:1,2,4,4,9,10,15, 20 10:1,1,20 11:2,5,18,19 12:9,14 13:4,7,8 14:21 16: 6 17:9,18 18:4,8 19:1,4,11 20:5 21:25 22:8 24:17 27: 18 28:9,17 31:5,9,11,23 32:9,15,20 33:3,14,15,17, 23 34:1,18,25 36:22
**motions** [8] 8:11,19 9:22,25 27:16 28:1
**MOUNTAIN** [8] 3:7 4:21 5:6, 8,19 9:6 17:10 18:22
**movants** [1] 30:17
**move** [4] 8:1 11:13 24:5 31: 21
**moving** [5] 5:2,22 7:9 10:13 11:11
**MS** [19] 4:13,23,24 8:9,19,24 9:2,4 10:23,25 11:22 12:2 18:13 31:16 34:20 35:4,10, 18 37:14
**much** [4] 17:8,13 20:11 25: 25
**muddied** [1] 35:6
**multiple** [3] 4:19 5:14 17:24

### N

**necessary** [3] 12:4 16:20 17: 1
**need** [14] 12:24 16:7 20:20 24:10 28:7 29:12 33:1,24 34:6,7,9 35:4 36:20,23
**needed** [1] 28:11
**needs** [1] 16:7
**never** [2] 13:12 29:23
**new** [4] 13:11 32:10,11,21
**next** [6] 8:8 21:14,20 22:1 25: 22 26:19
**night** [2] 7:19 19:9
**nine** [2] 17:25 18:24
**non-debtor** [10] 5:4,14 6:2 7:

10 8:3 11:12 22:10 26:3 27:5 28:24
**non-debtors** [9] 11:23 12:20 14:21 19:18 20:17 21:17 22:9,14 34:4
**non-party** [1] 6:3
**none** [2] 16:18 35:14
**nor** [1] 9:19
**normal** [1] 25:2
**note** [2] 9:14 39:9
**noted** [2] 19:9 27:7
**notes** [2] 10:10,10
**nothing** [2] 10:8 37:21
**notice** [8] 6:12,14,22 10:18 14:25 15:3 18:14,25 21:3 25:2 35:9,10 37:13
**noticed** [1] 16:12
**notices** [2] 5:25 28:19
**notified** [1] 19:8
**notify** [1] 36:11
**November** [2] 38:10,19 39:9
**Number** [3] 20:12 26:6 28:17

### O

**object** [2] 7:7 29:6
**objection** [4] 16:1 35:12 37:3, 16
**objections** [2] 7:22 37:12
**occur** [1] 16:21
**October** [7] 7:21 33:24 35:8, 24 36:15,19 37:10
**odd** [1] 31:11
**offered** [1] 38:14
**OFFICE** [3] 2:21 15:4,10
**office's** [1] 6:17
**Okay** [7] 8:19 9:3 10:25 23: 15 24:23 35:18 36:10
**OLSEN** [20] 4:13,13,23,24 8: 9,19,24 9:2,4 10:23,25 11: 22 12:2 18:13 31:16 34:20 35:4,10,18 37:14
**Olson** [5] 3:8 4:20,20 17:9 33:18
**Olson's** [1] 28:4
**One** [13] 5:5,6 6:11 7:4,5 8: 13,16,25 10:5,11 14:5 16: 17 18:11,12,23 19:6 20:2 25:10,11 29:19 33:4,5 34: 8
**only** [13] 7:4,20 9:15 11:3,20, 23 14:10 18:11 19:16 28:3, 9 31:16 33:10
**opportunity** [1] 29:6
**oppose** [6] 13:6,15 14:22 31: 10 35:21 36:4
**opposition** [8] 7:25 12:12,13

September 13, 2012

17:16 19:3 31:25 32:1 36:
22
order [18] 8:4 17:10,12 20:2,
5 21:25 22:11 23:11 24:18
26:17 27:16,17 29:4,12 32:
1,2 35:4 37:24
orders [5] 20:18 23:1,6 30:6,
9
original [2] 36:13 40:13
other [14] 5:14 11:21 13:2 14:
8,13,21 25:17 27:9,13 28:
14 35:20 36:11 38:1,21
Otherwise [1] 13:20
ought [1] 31:8
ourselves [1] 28:12
out [6] 6:15 7:2 15:7 26:21
33:1 35:22
outstanding [1] 16:10
over [1] 37:6
overrule [1] 37:21
overruled [2] 17:15 37:17
overruling [1] 17:13
oversight [1] 15:11
own [2] 11:2 31:20
owners [1] 5:20
ownership [2] 9:7 14:14

**P**

p.m [1] 39:13
page [13] 21:1,21 22:4,15,19,
20 23:3 24:25 25:12,16 26:
5,19 28:20
papers [5] 17:24 20:13,19 21:
2 27:8
paragraph [1] 21:4 25:17,22
part [4] 6:17 25:20 28:6 30:
17
particular [2] 12:14 16:3
particularly [1] 24:17
parties [28] 5:4,12,14,24 6:2,
4,14,14,18,18 7:5,10,11 8:
15 9:10 11:12,20 12:21,22
14:6 18:14 20:22 22:5 30:
11 34:24 35:9,13 37:12
parties' [1] 33:12
party [3] 9:18 30:22,23
past [1] 29:2
patently [2] 28:12,25
pending [13] 5:3,5 6:9 8:11,
20 9:9,21,23 14:7,8 15:19
26:18 33:16
people [1] 31:6
Perfect [1] 36:1
period [1] 10:7
perked [1] 33:13
permits [1] 12:23

person [1] 25:3
personal [1] 6:16
personally [1] 9:18
Peter [2] 2:22 4:16
peter.j.kuhn@usdoj.gov [1]
2:25
petition [1] 20:4
petitions [2] 23:20 24:1
plaintiff [1] 20:7
plan [3] 15:20 38:5,14
pleading [12] 20:14 21:22 22:
16,18,20 23:25 24:25 25:7,
11 27:8 29:4 30:7
pleading's [1] 33:8
pleadings [5] 8:14 16:5,25
21:15 29:25
Please [4] 4:4,8 21:6 25:1
plow [1] 20:17
point [5] 7:22 16:14,24 38:12,
13
position [25] 6:1,21 7:7,12 8:
1 12:8 14:24 19:17 20:8,
16 21:16 24:10 26:4,9,23
27:4 29:1,21,22,24 30:1,2,
3 31:11 32:18
pray [1] 9:19
preclusion [6] 23:8,8,12,13
34:6,6
precursor [1] 6:9
predecessor [2] 6:8 26:20
prejudice [1] 23:7
prejudicial [1] 28:13
preliminarily [1] 35:3
preliminary [2] 7:20 11:4 31:
24 34:18 35:24
preparation [1] 36:20
presented [1] 13:17
Preston [2] 25:13 26:7
pretends [1] 19:16
pretty [2] 17:8,13
previously [2] 13:12 17:14
primary [3] 9:21 8:17 39:7
prior [2] 28:19 31:6
probably [1] 35:16
procedural [2] 18:3 34:14
procedure [1] 19:14
proceed [13] 6:3 20:21 23:10
25:8 26:1 29:14,19 30:10,
23 31:1 32:3,13 34:24
proceedings [3] 22:5,21 28:
24
process [2] 11:4 13:19
production [2] 26:14 27:5
prohibit [1] 11:11
prohibits [1] 5:1
promptly [1] 32:2

proofs [1] 12:6
properties [2] 16:8,9
property [9] 5:21 9:8 10:12
16:12,17,18,18 30:12,14
proposed [1] 9:19
protect [1] 11:12
protective [10] 20:2,5 21:25
22:11 23:11 24:18 26:17
27:16,17 29:12
prove [1] 13:23
provide [3] 35:9 36:13 39:5
provided [1] 40:12
provisions [1] 21:10
punitive [1] 25:6
pursuant [2] 15:18 22:6
pursue [4] 6:4 12:5,22 13:14
pursuing [2] 11:19 12:21

**Q**

questions [2] 26:11 34:11
quibble [1] 16:16
quick [1] 12:18
quote [3] 20:9 22:20 26:8
quotes [1] 28:15
quoting [2] 24:19 25:16

**R**

raised [1] 19:2
read [6] 13:9 24:22 31:20 32:
9 33:12 38:4
reading [1] 32:15
ready [1] 35:20
real [2] 24:14 30:14
realize [1] 16:8
really [1] 14:11
reason [3] 17:18 19:10 28:6
reasons [3] 8:17 10:5 25:17
recall [2] 20:15 28:16
recalled [1] 33:11
receive [1] 6:19
received [5] 7:4 18:14,25 35:
10 37:13
recent [1] 25:23
recognize [1] 31:5
refer [3] 5:5,6 21:20
referred [1] 25:15
referring [1] 15:14
reflect [1] 37:9
reflected [1] 26:25
regarding [2] 6:11 26:15
Registered [1] 40:6
regular [1] 11:5
relate [1] 9:17
relates [4] 7:1,11 9:15 25:11
relating [2] 5:4 9:7
relief [31] 6:8,24 7:1,16,19 9:
20 10:16 11:2,25 12:4 13:

13 18:9 20:20 21:8 24:5
28:7,11 30:4,11,24 31:3,4
32:1,13 33:1,15 34:15 35:
13,14,17 37:11
rely [1] 19:14
remaining [1] 16:10,22
remains [1] 28:3
reorganization [2] 15:23 24:
14
report [1] 38:3,8
reported [1] 40:10
REPORTER'S [1] 40:2
reports [1] 39:6
representing [1] 32:16
request [3] 26:25 32:20,22
requested [4] 6:14 34:15 35:
13 37:11
require [1] 13:4
required [1] 36:6
requirement [1] 39:3
Residing [1] 40:25
resolve [2] 16:21 18:3
resolved [4] 13:18 22:12 34:
22,23
respond [1] 11:17
response [7] 7:6 13:5 26:13
28:17 31:15 33:12 36:19
responses [1] 7:4
retreated [1] 30:2
returns [1] 38:13
Revenue [1] 18:21
review [4] 16:2 26:12 29:5
36:16
reviewed [2] 16:25,25
reviewing [1] 16:3
RICO [1] 25:20
RIDGE [13] 2:2 4:6,10 5:11,
17 6:13 7:1 12:1,3 22:10,
22 25:18 32:24
rise [1] 39:12
role [1] 27:1
RPR [1] 40:24
Rule [3] 18:6 30:22 36:7
ruled [1] 17:8
rulings [3] 14:9 23:5 25:23

**S**

safe [1] 29:21
safekeeping [1] 40:14
Salt [7] 2:5,18 3:4,10 19:23
40:5,25
same [6] 6:18 11:6 17:15 18:
21 19:6,12 22:15 24:25 26:
15 29:3 36:6
Sammi [2] 21:23 22:3
sanctioned [1] 23:2

sanctions [1] 21:13
saw [1] 15:9
saying [4] 20:19 22:25 28:19 37:18
says [9] 18:6 21:6 22:1,4,13, 20 25:1 29:20 32:16
schedule [5] 7:2 11:7 31:22, 24 36:5
scheduled [4] 7:21 9:24 11:7 21:25
scheduling [1] 37:20
scope [2] 25:24 26:15
sealed [1] 40:13
second [1] 9:4
section [3] 5:13 15:18 28:21
see [6] 24:8,15,24 32:20 33:2 35:4
seek [4] 6:7 11:2 16:12 21:8
seeking [1] 16:17
seems [2] 12:7
send [1] 19:5
September [4] 17:12 36:8 40: 8,18
serious [1] 25:18
serve [1] 18:8
served [1] 18:11
Service [1] 18:22
set [4] 4:25 20:3 35:2 36:13 40:11
sets [1] 36:14
settlement [1] 27:23
seven [1] 18:24
several [2] 6:17 22:1
sheet [2] 39:3,4
sheets [1] 39:5
Sherilyn [1] 4:13
Shields [26] 3:2 4:18,19 13:3 17:21,22,23 23:17,19,22, 24 24:3,6,8,23 32:7,25 33: 9,15 35:21,23 36:1,10,17, 25 37:17
Shields' [3] 11:19 34:19 35:1
shoe [1] 13:2
short [1] 22:21
similar [1] 33:17
simple [3] 12:19,25 14:19
simply [1] 37:9
since [2] 10:19 36:3
six [1] 18:24
sixty [1] 26:5
SJ [1] 22:10
slc@berrytripp.com [1] 2:13
slow [2] 11:4 31:23
slowing [1] 34:21
small [1] 34:14
solution [1] 13:1

someone [1] 20:24
sometime [1] 7:24 11:8 38:3
sorry [1] 31:20
sought [2] 11:3,3
South [3] 2:11,23 3:10
specifically [1] 15:15
spell [1] 24:11
staff [1] 19:4
Stan [1] 26:7
stand [1] 17:18
standing [1] 10:16
start [3] 18:2 33:19 36:23
started [2] 27:22,25
State [27] 5:2 6:5 7:9 8:3,7, 12,13,24 10:3,7 12:23 13: 13,14,20,21,22 14:9 15:1, 17 18:22 20:14 29:17 34: 21 35:6,14 40:4,7
statement [6] 14:19 17:4,5 21:5 29:3 38:15
STATES [5] 2:21 4:17 21:11, 12 28:22
stating [1] 23:9
status [7] 10:3 11:9 24:12 38: 2,8,9,18
statutorily [1] 22:23
statutory [1] 28:21
stay [54] 5:1,25 6:1,7,8,20,23, 24 7:8,12,16,19 8:2,5 10: 16 11:2,10,11 12:4,20 13: 14 15:5,19 18:9 19:17 20: 16,21,25 21:6,18 22:2,6, 14 23:13 24:10 25:3,24 27: 6,11 28:7,11 29:9,11,23, 24 30:4,11 31:12,19 32:3, 13 33:1,16 35:17
stayed [3] 20:9 22:6,24
stenotype [1] 40:10
step [1] 11:4
STEPHEN [7] 2:8 15:18,23 18:16 22:22 25:19 26:22
still [1] 22:7
stood [1] 24:13
stop [1] 23:14
Street [1] 2:23
strike [1] 35:23
strong [1] 20:8
subject [5] 20:2 26:14,17 37: 1,12
submit [2] 32:1 36:14
subpoenas [1] 26:13
subsequently [1] 11:18
substance [1] 19:15
substantive [2] 35:12 37:5
substantively [1] 19:13
sufficiently [1] 31:6

suggest [1] 32:15
summary [3] 8:21 9:5 28:2
Sunday [1] 36:8
superior [1] 26:23

## T

tactic [1] 24:15
talked [1] 39:1
Tax [2] 18:23 38:13
Taylor [7] 8:11 9:24 15:16 17: 5 20:18 30:5,20
Taylor's [1] 30:25
TED [3] 3:1 4:19 17:23
Telephone [2] 2:12,24
Temple [1] 3:10
ten [2] 18:24 36:7
testimony [1] 40:11
that'll [1] 37:6
themselves [1] 14:14
theories [1] 26:21
theory [1] 9:11
there's [8] 8:10,12 9:16 15:4 17:24,25 18:6,23 19:19,22 21:15 27:25 30:8,12 31:16, 16,25 35:11 37:21 38:25
thereafter [1] 40:10
therefore [1] 21:18
they've [5] 10:18 11:3 29:1 30:2 31:11
third [2] 9:9 19:23
third-party [1] 13:10
three [13] 8:11,19 9:22,25 10: 11 18:19,24 19:22 27:15, 25 28:5 29:2 31:17
throughout [1] 10:6
throw [1] 35:21
throws [1] 27:10
Thursday [1] 35:8
tied [2] 14:2 34:8
Title [1] 28:22
TM [12] 5:24 7:5,11 8:14,15 9: 10 12:21,22 14:6,14 17:25 33:12
today [7] 6:10 10:6 17:16 20: 1 27:12 31:10 37:16
together [2] 34:23 36:23
took [4] 5:25 20:7 24:10 30:2
Toomey [9] 14:12 19:23 21: 24 22:17 23:10 26:18 27: 21 29:12,17 31:17,19
totally [1] 26:3
track [1] 31:23
transcribed [1] 40:8
transcript [1] 40:13
transcription [1] 40:11
TRAVERSE [4] 3:7 4:21 17:9

18:22
trial [2] 28:1 35:25
TRIPP [1] 2:10
Triumph [2] 5:7,15
true [2] 16:15 19:18
Trustee [2] 4:17 12:8
TRUSTEE'S [1] 2:21
trying [2] 7:15 16:6
Tuesday [2] 36:15 38:11
two [18] 5:4 6:5 7:4 8:13 10: 19 11:1 14:5 16:19 17:10 18:12,24 19:3 20:4 28:5 31:16 34:23 36:13 38:3
type [2] 25:2 31:23

## U

U.S [1] 12:8
U.S.C [1] 15:18
Ultimately [1] 30:5
under [6] 10:10 16:22 23:7 28:21 30:22 36:7
undermine [1] 15:22
understand [4] 13:10 14:9 37:15 40:12
unfair [1] 28:12
unfettered [1] 34:24
Union [1] 18:17
UNITED [5] 2:21 4:16 21:11, 12 28:22
Unless [1] 34:11
unsecured [1] 18:7
until [8] 7:16,21 10:19 11:1 19:3 24:5 27:12 30:10
unwilling [1] 29:14
up [6] 10:12 14:2,22 24:13 34:21 36:5
UT [1] 4:15
Utah [6] 2:5,18 3:4,10 15:17 18:22 40:4,7

## V

value [1] 16:9
VICTORIA [4] 2:8 15:23 18: 16 22:22
view [2] 16:24 25:25
violate [1] 22:25
violated [1] 20:25
violates [1] 25:3
violating [1] 21:18
violation [5] 21:9,11 23:1 27: 6,23
VS [12] 2:2 4:5,10 5:11,16 6: 13 7:1 12:1,2 22:22 25:18 32:23

## W

waited [1] 10:19

September 13, 2012

**waiting** [1] **24**:24
**waive** [1] **39**:3
**waiver** [1] **39**:2
**wanted** [4] **6**:11 **24**:8,15 **29**:
  18
**waste** [2] **20**:10,23
**waters** [1] **35**:6
**way** [5] **10**:19 **17**:18 **19**:8 **27**:
  10 **33**:7
**week** [1] **37**:7
**weeks** [2] **17**:12 **28**:5
**Wells** [1] **18**:23
**West** [1] **2**:11
**whether** [4] **5**:1 **6**:6 **7**:12 **29**:
  23
**who's** [1] **36**:14
**will** [12] **7**:1,23,24 **9**:24 **13**:6,
  15 **15**:2 **21**:10,12 **37**:9,24
  **38**:19
**willful** [1] **21**:10
**withdraw** [1] **15**:25
**withdrawn** [2] **27**:11,12
**within** [3] **36**:7 **38**:3,5
**without** [4] **29**:5 **30**:24 **31**:2
  **32**:1
**witnesses** [2] **36**:12,23
**won** [1] **28**:1
**wonder** [1] **15**:3
**work** [3] **36**:3,4,8
**working** [1] **29**:9
**writes** [2] **22**:13 **26**:20
**writing** [1] **31**:20
**written** [6] **22**:3 **30**:9 **33**:8 **36**:
  22 **37**:1,2
**wrote** [1] **25**:10

## Y

**years** [3] **10**:11 **27**:24,25
**yesterday** [1] **7**:19

CitiCourt, LLC
801.532.3441